U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 FEB -1 AM 11:44

CLERK

BY [signature]
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | Case No. 2:16-cr-00069 |
| DENNY REYES, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ORDER DENYING DEFENDANT'S POST-CONVICTION
MOTION TO INTERVIEW JURORS**
(Doc. 62)

Defendant Denny Reyes was charged in a two-count Superseding Indictment with aiding and abetting alien smuggling and unlawfully transporting aliens within the United States. On December 21, 2017, a jury convicted him of both counts. On January 15, 2018, Defendant filed a motion requesting leave to interview the jurors pursuant to Local Rule 83.5, which bars contact with jurors at all stages of a trial without the court's written permission. The government opposed Defendant's motion on January 29, 2018, and the court then took the matter under advisement.

The government is represented by Assistant United States Attorneys Abigail E. Averbach and Eugenia A. Cowles. David L. McColgin, Esq. and Steven L. Barth represent Defendant.

**I.  Factual and Procedural Background.**

On December 18, 2017, the parties conducted voir dire resulting in the selection of twelve jurors and two alternates. The jury pool was selected in accordance with this district's *Plan for the Random Selection of Grand and Petit Jurors for Service Within the District of Vermont* ("the Selection Plan"), enacted in compliance with the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861. The Selection Plan emphasizes that "[n]o citizen shall be excluded from service as a grand or petit juror on account of race, color, religion, sex, national origin, age or economic status." Selection Plan at 2. Under the

Selection Plan, the jury pool is randomly chosen from a Master Jury Wheel containing, at a minimum, five thousand names.

During voir dire, both the government and Defendant inquired into potential jurors' qualifications, bias, and their ability to be fair and impartial. Defendant's counsel conducted a thorough examination, questioning the panel on their views about immigration laws and policy, the fact that Defendant required the use of a Spanish interpreter, and the fact that Defendant was a naturalized United States citizen born in the Dominican Republic. None of the jurors empaneled for the trial expressed any bias or prejudice on this basis.

Following jury selection, the government presented its case in chief over three trial days, after which the court closed the evidence and charged the jury. In its instructions, the court emphasized that jurors "must not permit [themselves] to be influenced in the slightest degree by sympathy, passion, or prejudice, or any other emotion in favor of or against either party." (Doc. 59 at 9.) The court further instructed that jurors "may not consider the race, religion, national origin, sex, or age of the defendant or any of the witnesses in [their] deliberations over the verdict or in the weight given to any evidence." *Id.* at 10. After four and a half hours of deliberations, the jury returned a verdict of guilty on both counts. At no time, either during or after the trial, did the government, Defendant, or any juror report any incidents of racial bias or present any suggestion of racial animus.

## II. Conclusions of Law and Analysis.

> A general rule has evolved to give substantial protection to verdict finality and to assure jurors that, once their verdict has been entered, it will not later be called into question based on the comments or conclusions they expressed during deliberations. This principle, itself centuries old, is often referred to as the no-impeachment rule.

*Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 861 (2017). The no-impeachment rule, embedded in the common law, is codified through Fed. R. Evid. 606(b)(1), which provides that:

2

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

Fed. R. Evid. 606(b)(1).

This no-impeachment rule is subject to only three narrow exceptions: the court may consider evidence that the jury considered "extraneous prejudicial information[;]" that "an outside influence was improperly brought to bear on any juror;" or that the jury made a clerical mistake when completing the verdict form. Fed. R. Evid. 606(b)(2). The Supreme Court has also recognized a limited constitutional exception to the no-impeachment rule, applicable only in cases "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant[.]" *Pena-Rodriguez*, 137 S. Ct. at 869. In such circumstances, "the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee." *Id.*

Because the grounds for impeaching a jury's verdict are limited, courts are "reluctant to 'haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences.'" *United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989) (quoting *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983)). Post-trial investigation of potential juror misconduct is only appropriate where there is "clear, strong, substantial and incontrovertible evidence . . . that a specific, non-speculative impropriety has occurred[.]" *United States v. Stewart*, 590 F.3d 93, 133 (2d Cir. 2009) (quoting *Ianniello*, 866 F.2d at 543).

Of equal importance, "the proper functioning of the jury system requires that the courts protect jurors from being harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict." *United States v. Schwarz*, 283 F.3d 76, 97 (2d Cir. 2002) (internal

3

quotation marks omitted). "[A] district judge has the power, and sometimes the duty, to order that all post-trial investigation of jurors shall be under h[er] supervision." *United States v. Moten*, 582 F.2d 654, 665 (2d Cir. 1978). To that end, this district's adoption of Local Rule 83.5 reflects an established policy to "promote[] full and vigorous discussion by providing jurors with considerable assurance that after being discharged they will not be summoned to recount their deliberations, and they will not otherwise be harassed or annoyed by litigants seeking to challenge the verdict." *Pena-Rodriguez*, 137 S. Ct. at 865. As a result, courts generally only grant leave to interview jurors in the "gravest and most important cases." *Id.* at 858 (internal quotation marks omitted).

In this case, Defendant fails to point to any "clear, strong, substantial and incontrovertible evidence . . . that a specific, non-speculative impropriety has occurred[.]" *Stewart*, 590 F.3d at 133 (internal quotation marks omitted). Defendant tacitly acknowledges the absence of impropriety, stating that "[w]ithout the ability to conduct such interviews, [Defendant] has no way to ensure that the guilty verdict was not based on racial bias or other improper considerations." (Doc. 62 at 3.) Mere speculation, however, is insufficient because it would authorize counsel "to investigate jurors merely to conduct a fishing expedition." *Ianniello*, 866 F.2d at 543. Defendant's reliance on *Pena-Rodriguez* for a contrary approach is misplaced. In that case, two jurors independently contacted defense counsel with reports of a third juror's racially derogatory comments during deliberations. This communication was not improper under the State of Colorado's rules governing attorney-juror contacts, but the Supreme Court noted that "[t]he practical mechanics of acquiring and presenting . . . evidence [of racial animus in jury deliberations] will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." *Pena-Rodriguez*, 137 S. Ct. at 869. The Supreme Court's holding that "[w]hen jurors *disclose* an instance of racial bias[,] the law must not wholly disregard its occurrence[,]" *id.* at 870 (emphasis supplied), is not applicable here. No juror has disclosed any suggestion of racial animus, nor is there any evidence the verdict

4

was tainted in any manner. In such circumstances, the court should not promote intrusion into the jury's deliberations.

## CONCLUSION

For the foregoing reasons, Defendant's motion for leave to conduct juror interviews (Doc. 62) is DENIED.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 1st day of February, 2018.

Christina Reiss, District Judge
United States District Court